RECEIVED

SEP 17 2009

SEP 17 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

United States District Court

Northern District of Illinois

Eastern Division

Michael Steven Banks, # A81938,

       Plaintiff,

   - vs -

City of Chicago & Chicago Police Department

Officials, Regina Carter # 91307, Victor Law # 90560,

T. Skeloish # 20419, P. Loftus # 20337, M. Porter # 20265,

Robert A. Bartik; etc., Dr. Nancy L. Jones;

       Defendants.

09 C 5792
Judge Milton I. Shadur
Magistrate Judge Jeffrey Cole

Complaint Under The Civil Rights Act
Title 42 Section 1983 United States Code

1. Plaintiff:

  A. Name: Michael Steven Banks

  B. List All Aliases: Tony Robinson, Bryant Robinson, Andre Banks.

  C. Prisoner Identification Number: A81938

  D. Place of present confinement: Menard Correctional Center

  E. Address: P.O. Box 711 - Menard, Illinois 62259

2. Defendants:

  A. Defendant: Regina Carter

    Title: Homicide Detective # 91307

    Place of Employment: 727 East 111th Street, Chicago, Illinois 60628

  B. Defendant: Victor Law

    Title: Homicide Detective # 90560

    Place of Employment: 727 East 111th Street, Chicago, Illinois 60628

  C. Defendant: T. Skeloish (first name unknown)

(7)

Title: Homicide Detective # 20419
Place of Employment: 727 East 111th Street, Chicago, Illinois 60628

D. Defendant: P. Loftus (first name unknown)
Title: Homicide Detective #20337
Place of Employment: 727 East 111th Street, Chicago, Illinois 60628

E. Defendant: M. Porter (first name unknown)
Title: Homicide Detective # 20265
Place of Employment: 727 East 111th Street, Chicago, Illinois 60628

F. Defendant: Robert A. Bartik
Title: Polygraph Examiner (Badge No. unknown)
Place of Employment: Polygraph Section, Forensic Services Division, Chgo., Ill.

G. Defendant: Nancy L. Jones
Title: Forensic Pathologist - Assistant Medical Examiner
Place of Employment: 2121 West Harrison Street, Chicago, Illinois 60612

3. List all lawsuits you have filed in any state or federal court in the United States:
A. Name of case and docket number: Banks v. McBeth, No. 1-04-25-07205
B. Approximate date of filing lawsuit: November 2004 October 2004
C. List all plaintiff's, including any aliases: Michael Steven Banks
D. List all defendants: Ruth A. McBeth, Marijane F. Placek, Michael X. Wilson.
E. Court in which the lawsuit was filed: Northern District of Illinois, Eastern Division
F. Name of judge to whom case was assigned: Judge Amy J. St. Eve.
D. Basic claim made: Ineffective Assistance of Counsel's
H. Disposition of this case: Dismissed
J. Approximate date of disposition: November 8, 2004

A. Name of case and Docket Number: Banks v. Devine, No. 02 C 4271
B. Approximate Date of Filing Lawsuit: Unknown
C. List all plaintiffs, including any aliases: Michael Steven Banks
7. List all Defendants: Richard Devine, James Byrne, Christa Bowden
E. Court in which the lawsuit was Filed: Northern District - Eastern Division
F. Name of judge to whom case was assigned: Judge Manning
10. Basic claim made: Vindictive Prosecution
H. Disposition of this case: Dismissed
d. Approximate Date of Disposition: Unknown


A. Name of case and Docket Number: Banks v. Crane, No. 02 C 4269 & 02 C 5450
B. Approximate Date of Filing Lawsuit: Unknown
C. List all plaintiffs, including any aliases: Michael Steven Banks
7. List all Defendants: Clayton J. Crane
E. Court in which the lawsuit was Filed: Northern District - Eastern Division
F. Name of judge to whom case was assigned: Judge Nordle & Judge Andersen
10. Basic claim made: Violation of Due Process under the 14th Amendt.
H. Disposition of this case: Dismissed on Both Cases
d. Approximate Date of Disposition: Unknown


A. Name of case and Docket Number: Banks v. Roth, No. 91 C 3410
B. Approximate Date of Filing Lawsuit: May 1991
C. List all plaintiffs, including any aliases: Andre Banks
7. List all Defendants: Warden Roth - (First Name unknown)
E. Court in which the lawsuit was Filed: Northern District - Eastern Division
F. Name of judge to whom case was assigned: Unknown
10. Basic claim made: Unknown
H. Disposition of this case: Dismissed
d. Approximate Date of Disposition: June or July of 1991

4. Statement of Claim: The City of Chicago Have A Policy And An Unreasonable Practice Of Detaining Persons Arrested Without A Warrant Beyond McLaughlen 48-Hour Time Period, For A Probable Cause Hearing, In Which Such Practice Has Violated Plaintiff's Civil Rights Under The Fourth And Fourteenth Amendments.

That on March 26, 2001 between 9:17 and 9:30 pm., police responded to a radio call about a dead body in the basement at 7443 So. Drexel Ave., a Sgt. R. Goose #3242 arrived on the scene along with responding beats who then went to the rear of the mentioned address and observed that the basement door was ajar. Sgt. Goose #3242 entered the basement (without permission or a warrant) and discovered the body of Neal Washington lying face up on the basement floor.

Detective's Regina Carter #21307 and Victor Law #20560 went to the First Floor and conducted a brief interview of three individual's, a Reena Turner, Walter "Jerrick" Pogues and Plaintiff who were present in the apartment at the time police arrival (who first went to the basement) and learned that Mr. Banks resided on the 1st Floor. Turner and Pogues was transported first to Area 2 Headquarters while Plaintiff was still at the house with Det. Carter #21302, Law #20560, Sgt. Goose #3242 and along with other police officers and detectives, so at 10:30 pm., Plaintiff was then transported to Area 2 Headquarters by P.O. K. Kilroy #10398 and P.O. H. Hegewalds #18609, where they were instructed to immediately locked Mr. Banks inside an interrogation room.

And from March 26, 2001 until March 28, 2001, Plaintiff was held against his will while locked inside this interrogation room (because Plaintiff refuse to talk to them about other crimes in the area), so Det. Carter #21307, Det. Law #20560, Det. T. Skebisk #30419, Det. P. Loftus #20327 and Det. M. Porter #20265, kept trying to question Banks without the present of a lawyer. Therefore, these very same Defendants (Carter, Law, Skebish, Loftus and Porter) began to question and pressure Walter "Jerrick" Pogues about the death of Neal Washington, in which at some point Mr. Pogues implicated himself and Plaintiff (allegedly), but on March 28, 2001 at 11:00 pm., Pogues had

(10)

recanted his statements in front of ASA Cato, Carter #31302 and Law #30560 and again on March 29, 2001 at 3:30 A.M., also in front of ASA Cato, Skubish #30419 and Loftus #30332 and Porter #30265 and then was released from Area 2 Headquarters without "any" charge of a crime.

And under Illinois law, information relied upon to establish probable cause to arrest must be supported by some indicia of reliability -- for it was Puques false allegation that made the police detain Plaintiff locked inside of an interrogation room for 69 hours and another 42 hours before he was sent before Chief Judge Paul Biebel, Jr., on March 31, 2001 at approximately 1:00 p.m., for the United States Supreme Court Adopted a two-prong test with which the probable cause information must comply: (1) the basis of the informant's knowledge, and (2) the credibility or reliability of the informant -- here the informant was Walter "Derrick" Puques in whom was allowed to recant his false allegationss twice: 1) Mar. 28, 2001 at 11:00 p.m., And 2) Mar. 29, 2001 at 3:30 A.M. where he was then released.

## McLaughlin 48 Hour Rule

When a probable cause determination hearing is not made within 48 hours of a warrantless arrest, "the Defendant no longer has the burden to show unreasonable delay." The burden shifts to the State to show the existence of an emergency or other extraordinary circumstances. Also, a jurisdiction that chooses to offer combined proceedings, must do so as soon as is reasonably feasible, "but in no event later than 48 hours after a warrantless arrest."

Now the first police report reveals that Plaintiff was "arrested" on Mar. 28, 2001 at 2300 hours. And from Mar. 26, 2001 at 10:30 p.m. til Mar. 28, 2001 at 2300 hours (11:00 p.m.) is a total of 48 hours and 30 minutes in which this false arrest came from the information that was provided to them by Mr. Puques.

Therefore, the Defendants assumed the information provided by Mr. Puques was then valid, and based upon Mr. Banks silence and continue requests to have a lawyer present during questioning, as such, the Defendants arrested Mr. Banks on March 28, 2001 at 2200 hours. Under false pretenses.

(11)

However, while Det. Carter #31307 and Det. Law #20560 was typying up the charges for First Degree murder 720 dLCS 5/9-1 (A)(2), armed Robbery 720 dLCS 5/18-2(A) and concealment of a homicidal death 720 dLCS 5/9.3 (1)(A); Mr. Pogues was Recantng his False allegations on Mar. 29, 2001 at 2300 hours (11:00pm.) in Front of ASA Calo, Det. P. Loftus #20322, Det. T. Skebish #30419 and Det. M. Porter #30265.

For, while Defendants Carter #31307 and Law #20560 was writing up this Falsified Report with their own invented language, such as:

"The above listed offender "and a accomplicee "planned the armed Robbery of the victim Neal Washington by threatening him with a large knife." (See police report attached), Box no. 26, 29-30, and 38).

Because if this arrest of Mar. 28, 2001 at 2300 hours were Reliable, why did it take ASA Lewihan to approve the charges on Mar. 29, 2001 at 14:415 (2:45 pm.), nonetheless, the second police report states that the "Arrest" occurred on Mar. 29, 2001 at 19:05 (7:05 pm.), in which was a Thursday plenty of time to present him before the night judicial officer for a probable cause hearing (because according to their documents and information they claim they had, which gave them probable cause to arrest) but yet, the City's policy and practices wasn't enough to present the information before a judicial officer until Mar. 31, 2001 at 1:00pm.

So from the False arrest of Mar. 28, 2001 at 2300 hours (11:00pm) until Mar. 31, 2001 at 1:00pm, is 62 hours after the False arrest of Mar. 28, 2001 at 11:00pm., and 111 hours from the very First initial arrest of Mar. 26, 2001 at 2230 hours (10:30pm) before been presented to the Hon. Judge Bielot on Mar. 31, 2001 for a "bond hearing" that was denied. (B.S.C. 49; Tr. 10/30/04, p. XX-3).

Therefore, because the City's policy and practices of detaining persons arrested without a warrant beyond the 48-hour time period, have subjected Mr. Banks to a self-induced, non-Administrative Delay (because even the First police report charges were approved by ASA Lewihan on Mar. 29, 2001 at 14:415 (2:45pm)), as such, Mr. Banks asserts that, the 62 hours delay from the False arrest on March 28, 2001 at 2300 hours was extreme, outrageous and excessively unreasonable

and thus violated Mr. Banks civil rights under the Fourth and Fourteenth Amdts., under the United States Constitution. Even the McLaughlin Court condemned Delays for the purpose of "gathering additional evidence to justify the arrest" (Tr. 10/30/04, p. XX19) as unreasonable and thus determined them to be an illegitimate basis for postponing a judicial determination of probable cause. For the Delay to which Mr. Banks was subjected, by the City's practices, is certainly analogous.

And in both circumstances, from Mar. 26, 2001 at 10:30 p.m., til Mar. 28, 2001 at 2300 hours; and from Mar. 28, 2001 at 2300 hours til Mar. 31, 2001 at 1:00 p.m., Plaintiff Mr. Banks was subjected to unreasonable prolonged custody without judicial scrutiny so that the police can undertake further investigatory steps that require the presence of the Plaintiff, a presence that cannot properly be required without a prior judicial determination of probable cause.

Therefore, contrary to any illogical assertions by the City, it cannot be believed that the first 48-hours and 30 minutes Delay (in which was a false arrest) and the second 62 hours Delay occasioned here pursuant to the extended Detention policy and practice can ever be characterized fairly or realistically as a mere administrative step resulting from the practical realities of the criminal justice system, in which does not justify Mr. Banks prompt hearing -- so, even to the extent that the City may asserts that it had a right to hold Mr. Banks from the becunsted statements by Mr. Pogues -- "until it could build a better case for the Denial of bail, for Mr. Banks, this would surely run afoul of both Christin and McLaughlin."

4B. Statement of Claim: That The Defendants Denied Mr. Banks A Prompt And Timely Probable Cause Determination Hearing By A Judicial Officer From March 26, 2001 Til October 30, 2004, On Which Violated Mr. Banks Civil Rights Under The Fourth, Eighth And Fourteenth Amdts.

Now the Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized".

And the Eighth Amendment also guarantees that "excessive bail shall not be required", nor "cruel and unusual punishments inflicted." Also, the Fourteenth Amendment of this very same Constitution, guarantees that, "No State shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any persons within its jurisdiction the equal protection of the laws.

Therefore, from March 26, 2001 at 10:30 pm when Mr. Banks was taken from his home (dwelling) and was immediately locked inside of an interrogation room and on March 28, 2001 at 2300 hours was falsely arrested, was an unreasonable seizure by the guarantees provided under the Fourth Amendment. So, from Mar. 28, 2001 until Mar. 31, 2001, the Eighth Amendment provisions of cruel and unusual punishment was inflicted by each Defendant in their individual official capacity; and on Mar. 31, 2001 the latter provision was imposed (excessive bail), a "No Bond" was given due to the deceptions by the Defendants, and from Mar. 29, 2001 at 7:05pm, til Oct. 20,2004 the structures of the Fourteenth Amendment was violated by each Defendant in their individual official capacity, for their conduct was extreme, out-rageous and excessively unreasonable in not providing Mr. Banks with a proper and timely Gerstein hearing before 3yrs. 6mos. and 21 days from his second illegitimate arrest of Mar. 29, 2001 at 7:05pm (19:05).

As such, the Defendants conduct was surely malicious, willful and wanton, be-cause based upon the false arrest of Mar. 28, 2001 at 2300 hours (See Box No. 26), the Defendants Carter #21307 and Lacy #20560 despite the implications made by Mr. Rogers -- the Defendants had only arrested Mr. Banks, because Plaintiff had refused to provide them with any information, so he was the only one being arrested, as such, their conduct was malicious, willful and wanton done deliberately in accordance

(9)

with their well to commit an unlawful act without just cause. And the plain meaning of the words: malicious, willful, and wanton tells a story about the Defendants official conduct; for an act is willful if it is deliberate and done in accordance with one's will. (Mar. 26, 01 t.l Mar. 28, 01) The American Heritage Dictionary of the English Language 1466 (1969). Essentially willful conduct is intentional conduct, and since malice has an intent component, a person who acts maliciously Also acts willfully, so an act is wanton if it is maliciously cruel or merciless. The American Heritage Dictionary of the English Language 1444 (1969). And according to Black's Law Dictionary, the word wanton signifies "unreasonably or maliciously risking harm while being utterly indifferent to the consequences". Black's Law Dictionary 1576 (7th Ed. 1999). These definitions show that malicious conduct is Also wanton conduct.

Therefore, judicial assessment of probable cause was necessary to guard Against the Defendants conduct of illegitimate interference with Mr. Banks Liberty rights occasioned by prolonged pretrial detention which violated Mr. Banks civil rights under the Fourth, Eighth and Fourteenth Amendments.

4/C. Statement of Claim: That The Defendants Conduct Was Extreme, Outrageous And Excessively Unreasonable On Which Such Conduct Inflicted An Instentional Mental, Emotional And Physical Distress That Went Beyond All Bounds Of Decency On A Civilized Community That Violated Mr. Banks Civil Rights Under The Fourth And Fourteenth Amendments.

As A general Rule, persons arrested with or without A warrant must Receive A "judicial determination of probable cause within 48 hours," because the Fourth Amendment Affords persons who Are Arrested the Distinct Right to "a judicial determination of probable cause As a prerequisite to extended Restraint of liberty following Arrest," but here, in the present case: from Mar. 26, 2001 At 10:30pm til Mar. 28, 2001 at 2300 hours the Defendants Arrested Mr. Banks without A warrant And without the prerequisite Finding of probable cause, because As Mr. Banks was being Arrested

Mr. Pugues was Recanting his previous false statements at 11:00pm (Tr. 10/20/04, p. XX 33) and again on Mar. 29, 2001 at 0330 am (p. XX 36), but yet, the Defendants malicious, willful and wanton Refused to Release Mr. Banks, as such, the conduct was extreme and outrageous from Mar. 26, 01 at 10:30pm til Mar. 28, 01 at 2300 hours when the Defend- ants falsely arrested him based upon the Recanted statements made by Mr. Pugues, in which was an intentional infliction of mental, emotional and physical distress that was excessively unreasonable because Mr. Banks selected to do what the law Allows him to do - exercise his Right to Remain silent and the Right to have a lawyer present Doing question.

And from Mar. 28, 01 at 18:00 til Mar. 31, 01 at 1:00pm, the Defendants Det. Carter #31302, Det. Law #20560, Det. Shebish #20419, Det. Loftus #20327, Det. Porter #30265 and Robert Bartsh, had continue to stress the fact that Mr. Banks would surely Receive the Death penalty - for Robert Bartsh claimed that Mr. Banks made two alleged oral statements to him while at the polygraph office on Mar. 28, 01 at 19:18 hours (7:18 pm), however, ASA Cato and Det. Shebish #20419 claimed that they witnessed these very same oral statements on Mar. 28, 2001 at 11:59pm. (but no arrest occurred at 19:18 hrs.). Therefore, the Defendants intended their conduct to inflict severe mental, emotional and physical distress or knew there was at least a high probability their conduct would inflict such distress (even though Mr. Banks didn't receive the threaten Death penalty - as was asserted by Det. Porter #30265, Det. Shebish #20419 & Robert A. Bartsh; but Mr. Banks did in fact receive a Death sentence, in which was Natural Life), so their conduct did in fact cause Mr. Banks severe mental, emotional and physical distress, because it has taken Mr. Banks through Due Diligents of nearly 2 years to Reveal that the Defendants conduct and the process that they intentionally invoked upon Mr. Banks is Selective in its substantial form Required by law, and that such process was unauthorized to issue or execute the same from Mar. 26, 01 at 10:30 pm. til Mar. 28, 01 at 2300 hours, nor from Mar. 28, 01 at 2300 hrs. til Mar. 31, 01 at 1:00pm., nor from Mar. 28, 01 at 2300 hrs. til Oct. 20, 2004, nor from Oct. 20, 2004 til Jan. 20, 2006 for arrest or imprisonment, as such, the Defendants conduct was a preDetermination to

(16)

commit an unlawful act without just cause, chiefly because they wanted to change Mr. Banks with First Degree murder, due to his health situations, his background and the fact Mr. Banks was exercising his constitutional rights. So despite Mr. Banks's background the Defendants conduct can never be politically right when the conduct displays that it is morally wrong.

Because the information that the Defendants relied upon to established probable cause to arrest Mr. Banks, wasn't supported by any iota of reliability--for the information that was provided to them by Mr. Walter "Derrick" Rogues, in which the Defendants use to arrest Mr. Banks on Mar. 28, 2001 at 0300 hours and to further detain him for the commencing of trial on January 19, 2006 in which was extreme, outrageous, and excessively unreasonable, for their conduct was intentional, malicious, willful and wanton to inflict a mental, emotional and physical distress upon Mr. Banks's well-being.

17. Statement of Claim: That Dr. Jones Had Full Knowledge Of The Prosecutor's Documents Which Would Contradicts Her Findings That Washington's Death Occurred On Mar. 26, 2001 at 2:00pm. As Such, Dr. Jones Testimony Was A Malice Afore Thought To Assist The Prosecutor As Its Defective Process To Convict Mr. Banks, And Her Unprofessional Conduct Violated His Fifth And Fourteenth Amdts. Rights.

On January 19, 2006, Dr. Nancy Lynne Jones, was sworn in as an "Forensic Pathologist Expert Witness," she testified that she performed the autopsy of Neal Washington on March 27, 2001 at 1:00 pm. (R.KKKK174), and upon her examination in Case No. Mar. 4181, there were Abrasions and scratches on the back that were consistent with the body being dragged on the ground or the floor. She further testified that one type of abrasion that she notice upon Washington's body was a "brush burn abrasions," may also be called "a bug burn type of abrasion," "where the surface of the skin had been moved away." (R.KKKK 177-128; 183-184; LLLL 96). For this fact is also consistent with Mr. Banks assertions that the deceased was clothed when he was dragged from point A to

point B. (R. KKKK242) Because the friction from clothes can also causes a brush burn type abrasion or rug burn abrasions (And since no form of rugs was found in Mr. Banks' 1st floor apartment on Drexel, the abrasions of brush burn or rug burn inferences was caused by the body being clothed while dragged on the floor.)

And as an expert in "Forensic Pathology," Dr. Jones further testified that she had the Toxicologist test for "opiates and cocaine," which she asserts was negative (R. KKKK 192-193) and she also checked for "cocain metabolites" called "benzoylecognine," which also was negative (R. KKKK 194). See General Progress Report, p. 32-33.... She further asserted under oath that, with cocaine, "the most common metabolite that she look for is benzoylecognine," for benzoylecognine will stay around in the body longer than cocaine will, "because cocaine is usually gone within 24 hours." (R. KKKK 194-195).

However, as a malice afore thought, Dr. Jones deliberately and willingly testified that, "there isn't anything inconsistent in her findings that the stab wound upon Neal Washington occurred on March 24, 2001" (R. KKKK 190), and "the only way she can determine the actual death, is that she would had to be there" (R. 204). (Death Certificate).

First and foremost, one of the first steps in an investigation of a homicide is to determine the "time of death" (See Postmortem Report by Dr. Jones, Death Certificate by Dr. Nancy Lynne Jones, M.D., Morgue Report by Patrick Fowley, M.E. Reos #33 statements and Marqueta Moore statements, also Investigation Reports stating date & time of death).

And for Dr. Jones to proudly say that she has performed ten's of thousands autopsies then she know the protocol procedure with her eyes closed, and good estimates within certain limits can be established by observation of the following changes that take place in the body after death: A) Temperature and rate of cooling; and b) Post-mortem lividity; *** and these changes can provide information on the following points: A) Time of death; b) Alterations in the position of the body after death; and E) Whether the death was suicide or a murder.

Now on Mar. 24, 2001 thru Mar. 26, 2001 the temperature was in the mid-30's in which was the first week of Spring -- As such, Dr. Jones made a predetermination to commit an unlawful act against Mr. Banks chiefly because there wasn't a patholog-

1st on Mr. Banks behalf to rebuttal the testimony given by Dr. Jones and because it was an offense for first degree murder against Mr. Banks.

For Dr. Jones testified that she received possession of Neal Washington's body on the 26th of March 2001 -- however, Dr. Jones never received possession of Mr. Washington's body on March 26, 2001 at 9:00pm, as she testified too and placed on the Death Certificate. Because on Mar. 26, 2001 between 9:17 and 9:30pm, police responded to a radio call about a dead body found at 2443 So. Drexel in the basement. Therefore, Dr. Jones determination of the time of death and date of Mar. 26, 2001 came from information, documents and reports that was provided to her by the Defendants, her co-defendants. As such, Dr. Jones testimony was prejudicial in its substantial form that contributed to Mr. Banks' conviction, which denied him to a fair and important trial and denied him of his civil rights under the Fifth and Fourteenth Amendments, because Dr. Jones conduct was malicious, willful and wanton through ill-will and bad-faith as an Medical Examiner and as an sworn expert witness Forensic Pathologist for the prosecutor's in the case of People v. Banks, No. 01C109787-01.

4E. Statement of Claim: That Mr. Banks Civil Rights Under The Fourth, Eighth And Fourteenth Amdts., Were Intentionally Denied To Him -- From Mar. 26, 2001 Ustil Sept. 3, 2009, Because The Trial Court Had Exceeded Its Jurisdiction To The Subject Matter (A Gerstein Hearing) And Person (Mr. Banks) After 3 years, 6 months. And 24 Says Of The Initial False Arrest, Which Has Caused Excessively Mental And Emotional Distress Upon His Well-Being.

Mr. Banks was denied the right to a probable cause determination hearing by an judicial officer from Mar. 26, 2001 til Oct. 20, 2004-"before the trial court made its determination as to "whether or not the arrest and detention by the police was with the requisite findings of probable cause", in which such of an extreme, outrageous and unreasonable delay, deprived Mr. Banks of the

"core" requirement of the Fourth Amendment "to be secure in his person against un-reasonable seizures shall not be violated and no warrants shall not issue but upon probable cause supported by Oath or affirmation," but here, in the present case, the trial court "findings" went only towards a Fifth Amendment analysis towards statements made -- "but totally disregarded the core of the Fourth Amendment as to the excessively unreasonable delay (3 yrs. 6 mos. & 24 days) before a Durstin hearing was held:- For the trial court findings went as such:

Thank you. I find that the defendant voluntarily accompanied the police to the police department". And in conversation that took place between defendant and the police with others there developed probable cause to arrest the defendant and to continue to detain him". Motion to quash arrest is respectfully denied. (Tr. 10/30/04, p. XX 45).

As such, the trial court's findings exceeded the limits of its jurisdiction to the subject matter by conducting a Durstin hearing after 3 yrs. 6 mos. & 24 days from the initial arrest of Mar. 26, 2001 (when Mr. Banks was locked immediately inside of an interrogation room upon arrival to the police station) (Tr. 10/30/04, p. XX 3, 15, 17, 35). Therefore, the Durstin hearing process by the trial court was defective in its substantial form required by law, because first and foremost, it was extreme, outrageous, untimely and excessively unreasonable; secondly, the indictment failed to adequately set forth "the nature and elements of the offense charged" as re-quired by the Code of Criminal Procedure of 1963, and both the United States Constitution, Amend, 6th and the Illinois Constitution 1970, Art. 1, section 8; As such, what's at stake in this defective process are: "the prosecutions of any deprivation of liberty without due process of law", Amst, 14th; "the prosecution of any form of cruel and unusual punishment inflicted", Amst, 8th, And, "the prosecu-tion of any unreasonable seizures", Amst, 4th.

However, in Illinois, the Durstin Rule has been codified in the Code of Crimi-nal Procedure 1961, but there is no remedy for a deprivation of the presentment rule, Illinois courts have held that the delay (if reasonable asserted) is a factor

to be considered when determining "whether the confession was voluntary." Now, what must reveals itself about this "egregious analysis", is the compelling decisions by the United States Supreme Court Landmark Cases and the decisions by this Court as well, has absolutely nothing to do with "voluntary or involuntary statements or confessions" (as the State's Attorney's Office continue to argue), but, directly involves the application of provisions which protects the Fourth and Fourteenth Amendments interests (emphasis added).

So, as can be gleaned from the State's Attorney's Office prior arguments which so embraces the *Gerstein/McLaughlin* rule, "only applies and argues a Fifth Amendment analysis to the voluntariness of statements or confessions given to the police", but, "totally disregard any concerns or mentioning of the Fourth Amendment right "to be secure against an unreasonable seizure as an independent right," nor does this analysis and arguement show any regards of protection for the "Due process provisions of the Fifth and Fourteenth Amendments", by the requirements and guarantees set forth in the United States Constitution:

**** Nor be deprived of life, liberty, or property, without due process of law ****

And since the subject matter has exceeded the trial court's limit of its jurisdiction because the process was unauthorized to issue or execute the same after 3 yrs., 6 mos., and 24 days of the initial warrantless arrest that occurred on Mar. 26, 2001 -- as such, Mr. Banks was deprived of his fundamental and civil rights by the trial court, for its conduct was "cruel and unusual punishment" inflicted, because existing laws in Illinois did not allow such defective process to issue or orders to be entered for arrest or imprisonment from Mar. 26, 2001 to Oct. 20, 2004, and from Oct. 20, 2004 until the present day Sept. ?, 2009.

Therefore, it wasn't just the trial court's obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof for Mr. Banks, but also, this obligation was entrusted to the State's Attorney's Office; because in their official capacity are the

(21)

Representative of all the people, including Mr. Banks, and it was as much their duty to safeguard the constitutional rights of Mr. Banks as those of any citizen.

Furthermore, the Supreme Court of the United States found that a probable cause hearing is a critical stage of a criminal proceeding where the right to counsel attached, for the guiding hand of counsel at the probable cause determination hearing is essential to protect the indigent accused (Mr. Banks) against an erroneous or improper prosecution; first, "the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the judicial officer to refuse to bind the accused over", second, in any event, "the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the hearing, or preserve testimony favorable to the accused of a witness who does not appear at the trial," and third, "a trained counsel can more effectively discover the case the State has against her client and make possible the preparation of a proper defense to meet that case at trial."

And since the State's Attorney's Office and court-appointed counsel intentionally deprived Mr. Banks of these substantial rights, their conduct is not guiding, enforcing and protecting every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, is subject to the full structures of Section 1 of the Fourteenth Amendment, which provides that:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Therefore, throughout the Constitution of the United States and Illinois Constitution the term "shall" is used and has been construed by the Illinois Supreme Court as a clear expression of legislative intent to impose "a mandatory obligation," as such,

the conviction and sentence imposed through the defective process by having a *Gerstein* hearing after 3yrs. 6mos. & 24 days from the initial warrantless arrest of March 26, 2001 the foundation of which evidence is obtained in disregard of Mr. Banks liberties and deemed fundamental by the Constitution cannot stand -- because conduct has exceeded the limit of the trial court's jurisdiction to the subject matter and commands for automatic reversal.

Because the protection of the Fourth Amendment should have been applied at arrest, the moment Mr. Banks was locked inside of that interrogation room on March 26, 2001 by the trial court and through the probable cause determination hearing, that was finally provided on October 20, 2004 through the form of a "Motion To Quash Arrest and Suppress Evidence," and the trial court should have applied "Due process" principles of the Fourteenth Amendment which governs Mr. Banks conditions of confinement before, during and after the judicial determination of probable cause (in which the finding by the trial court was solely based upon a Fifth Amendment Analysis), and the Eighth Amendment applied from October 20, 2004 til January 20, 2006 following Mr. Banks conviction -- and also to this present day of September ?, 2009.

Therefore, since the trial court has exceeded its limit of its jurisdiction to the subject matter (making a finding upon a *Gerstein* hearing after 3yrs. 6mos. & 24 days of the initial arrest of Mar. 26, 2001) and person, which has subsequently entitled Mr. Banks to be discharged from custody and awarded punitive damages, because under the conduct and circumstances of each Defendant in their official capacity made the process defective and unauthorized to issue or execute the same for arrest or imprisonment from Mar. 26, 01 til Oct. 20, 04; Oct. 20, 04 til Jan. 20, 06; Jan. 20, 06 til Aug. 21, 06; and Aug. 21, 06 til Sept. ?, 09 -- and this process and conduct is an ongoing matter because it continue to deviated from its legal rule and deprives Mr. Banks of his Civil and Constitutional Rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States and Illinois Constitution, Article 1, secs. 2, 6, 7, 8, & 10; in which is an imminent danger of serious mental, emotional and physical distress problem that was inten-

tionally inflicted by each Defendant, by listening to a person whom was forced to im-
plicate himself and Mr. Banks -- but was allowed twice to recant his false statements
and was released without being charged, while the Defendant's continue to deprieve
Mr. Banks of his fundamental civil and constitutional rights without providing him
to a Gerstein hearing until 3 yrs, 6 mos. & 94 days after his arrest begins.

5. Relief:

1) Enter an Order Declaring that the City of Chicago policy and practices violates the
Gerstein / McLaughlin rule by Detaining Mr. Banks well-beyond the promptness
and 48-hours requirements for a probable cause determination hearing by a judicial
officer -- in which the 111-hours Detention Deprived Mr. Banks of his civil and con-
stitutional rights under the Fourth, Eighth and Fourteenth Amendments -- as such,
is liable for the sum of $10 million dollars for its Deprivations to its policy and
practices to a non-administrative step realities of the criminal justice system.

2) Enter an Order Declaring that the City of Chicago is fully liable for the extreme,
outrageous and excessively unreasonable conduct by each police officer in their full
official capacity for falsely arresting Mr. Banks from Mar. 26, 2001 at 10:30 p.m., til
Mar. 28, 2001 at 23:00 hrs., which violated his constitutional rights and Deprived him
of his civil liberties under the Fourth and Fourteenth Amendments -- as such, for the
extreme, outrageous and excessively unreasonable seizure by each police officer in their
official capacity - the sum of $10 million dollars for the civil liberties Deprivation.

3) Enter an Order Declaring that each police officer in their individual full official
capacity, conduct was excessively unreasonable for Detaining Mr. Banks locked inside
of an interrogation room for 69-hours without consulting with an attorney, not able
to use the restroom regularly, no food or snacks, and wasn't allowed a phone call, as
such, it Deprived Mr. Banks of his civil liberties under the Fourth and Fourteenth
Amendments, and by intentionally doing so, Award the sum in punitive damage of -

(19)

$8.6 million Dollars, and for the extra 42-hours before the Defendants presented Mr. Banks before the Hon. Judge Breble, Jr., for a "bond hearing" on Mar.31, 2001 the sum in punitive Damages of $4.250 million Dollars.

4) Enter an Order Declaring that each police officer in their individual official capacity conduct made the process Defective in its substantial form required by law, because the process was unauthorized to issue for arrest on Mar.26, 2001, 28 or 29, which Deprived Mr. Banks of his civil liberties under the Fourth, Eighth and Fourteenth Amendments -- As such, award the sum in punitive Damages of $8.6 millions Dollars, for it was the extreme, outrageous and excessively unreasonable conduct of each police officer which contributed to Mr. Banks tainted convictions.

5) Enter an Order Declaring that Mrs. Nancy Jones premeditated perjured conduct which contributed to Mr. Banks conviction -- Deprived him of his civil liberties in receiving a fair and impartial trial under the Fifth, Sixth and Fourteenth Amendments, and that Mrs. Jones conduct was done maliciously, willful and wanton that caused a great deal of mental and emotional distress from her perjured testimony - As such, award the sum for her intentional inflicted Distress that was extreme and outrageous of $8.6 millions Dollars, and for each civil rights Deprivation that was contributed to the conviction from her perjured testimony - the sum of $8,500 Dollars a Day - so from January 19, 2006 until the completion of this civil complaint.

6) Enter an Order Declaring that each Defendant in their individual official capacity conduct was extreme, outrageous, excessively unreasonable, malicious, willful and wanton that Deprived Mr. Banks of his civil liberties rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments which made the trial court exceed the limits of its jurisdiction to the subject matter (a Dristens hearing) and person (Mr. Banks) when a probable cause Determinations hearing by a judicial officer was finally provided on October 20, 2004 -- As such, award the sum of $100 million,

Dollars for the lack of jurisdiction by the trial court from the conduct by the Defendants in their official capacity--"because the law in Illinois does not allow such of a Selective process to issue nor any orders to be entered for arrest or imprisonment after 3 yrs. 6 mos. & 24 days of the initial warrantless arrest of Mar. 26, 2001 at 10:30pm."; and for this Selective process after 3 yrs. 6 mos. & 24 days which deprived Mr. Banks of his cruel liberties under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, award the sum for such unauthorized arrest and imprisonment $100 million Dollars and for each civil rights deprivation the sum of $100 million Dollars a piece because the Defendants conduct was intentionally inflicted which caused a mental and emotional distress of imminent danger of physical injury to Mr. Banks well-being-- As such award the sum of $100 million Dollars.

7) Enter an Order Declaring that due to the trial court's lack of jurisdiction to the subject matter and person--"waiver, default, or dismissal of the complaint, is not an option to considered upon this meritorious claim"--since the trial court had exceeded the limits of its jurisdiction in making a finding upon Mr. Banks probable cause determination hearing after 3 yrs. 6 mos. & 24 days of the instant warrantless arrest on Mar. 26, 2001 at 10:30pm, nor did the trial court have authorization to enter any orders for imprisonment since jurisdiction was lacking to the person (Mr. Banks) through a Selective process to a non-administrative step of the criminal justice system--As such, Mr. Banks, respectfully request that this Honorable Court order that he be immediately release from custody due to the lack of jurisdiction and the unauthorized process of imprisonment that was intentionally inflicted through ill-will and bad faith by the City of Chicago's policy & practices and by the extreme, outrageous, excessively unreasonable, malicious, willful and wanton conduct by each Defendant in their full official capacity that inflicted a intentional mental and emotional distress through ill-will and bad-faith.

And to grant Mr. Banks all of his requested relief sought, and any other relief this Honorable Court deem fair, just and appropriate for the trial court's lack of juris-

(26)

diction to the subject matter and person and for the extreme, outrageous, excessively un-
reasonable, malicious, willful and wanton conduct by each Defendant that lead to Mr.
Banks conviction and unauthorized imprisonment.

6. The Plaintiff Michael Steven Banks Demands that the case be tried by a jury.
☒ yes  ☐ No

## Certification

By signing this Complaint, I, Michael Steven Banks, certify that the facts stated
in this Complaint are true to the best of my knowledge, information, documents and
belief. I also understand that if this certification is not correct, I may be subject
to sanctions by the Court.

Signed this 14th Day of September, 2009

S/ Michael Steven Banks

Michael Steven Banks

Reg. No. A81938

P.O. Box 711

Menard, Illinois 62259